456 S.E.2d 493

**In re Petition of Chester SNUFFER for an Appeal of A Final Order of the Division of Natural Resources that Revokes Hunting and Fishing Privileges for Five Years.**

No. 22479.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided March 24, 1995.

William D. Stover, Beckley, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., David L. Lahr, Asst. Atty. Gen., Charleston, for appellee.

FOX, Justice: [1]

In this case we consider a challenge to the validity of West Virginia Code § 20-2-38 (1989), which grants the Director of the West Virginia Division of Natural Resources (DNR) the authority to revoke, for cause, a hunting or fishing license previously issued.

By letter of 1 March 1993, the appellant, J. Edward Hamrick, III, then Director of the DNR, revoked for five years the hunting and fishing privileges of the respondent, Chester C. Snuffer. The respondent requested an administrative review of the Director's order. An administrative hearing was conducted on 1 July 1993, and the hearing examiner denied the respondent's appeal, holding the revocation proper and consistent with applicable law. The respondent then petitioned the Circuit Court of Raleigh County, West Virginia, for a judicial review of the hearing examiner's decision under the provisions of W.Va. Code § 29A-5-4.[2] The circuit court heard the matter on 20 December 1993, and subsequently reversed the Director's revocation of Mr. Snuffer's license.

The Director's license revocation notice alleged that Mr. Snuffer was guilty of "[a] history of repeated wildlife-related violations ... and a blatant disregard for state wildlife laws for a number of years." The Director based this assessment on a series of violations compiled by Mr. Snuffer during the period from 1977 through 1993.

On 21 November 1977, Mr. Snuffer pleaded guilty to the charge of illegally transporting a pistol or revolver in a motor vehicle.

On 13 January 1987, a jury convicted Mr. Snuffer of spotlighting with a firearm. He was fined $100.00, plus costs and jury fees, and sentenced to ten days in jail. Based on this conviction, the Director revoked Mr. Snuffer's hunting privileges for two years, pursuant to W.Va.Code § 20-2-38.[3]

On 24 October 1987, while his license was revoked, Mr. Snuffer pleaded guilty to (1) illegally killing a deer out of season; and (2) hunting without a license. Based on these convictions, the Director, acting pursuant to West Virginia Code of State Regulations § 58-49-3.2, extended Mr. Snuffer's license revocation for an additional two years.

On 21 December 1990, Mr. Snuffer pleaded guilty to brandishing a deadly weapon while hunting.

On 4 May 1992, Mr. Snuffer pleaded *nolo contendere* to hunting by an illegal method, i.e., blind hunting over illegal bait—corn, in violation of W.Va.Code § 20-2-5(6) (1989).

On 11 February 1993, Mr. Snuffer was issued a citation charging him with exceeding the creel limit—trout, in violation of W.Va. Code § 20-2-5b (1989). He appeared that day in magistrate court and was assessed a fine and court costs, which he ultimately paid.

As a result of the accumulation of violations, and pursuant to W.Va.Code § 20-2-38, the Director sent Mr. Snuffer an official notice of revocation on 1 March 1993. West

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order extended this assignment until further order of said Court.

2. West Virginia Code § 29A-5-4 (1993) states, in pertinent part:
   (a) Any party adversely affected by a final order or decision in a contested case is entitled

to judicial review thereof under this chapter, but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law.
   (b) Proceedings for review shall be instituted by filing a petition, at the election of the petitioner, in either the circuit court of Kanawha County, West Virginia, ... or in the circuit court of the county in which the petitioner or any one of the petitioners resides or does business....

3. On 20 February 1987, two additional charges of possessing a loaded firearm in a motor vehicle and illegally carrying a handgun were dismissed.

Virginia Code § 20–2–38 (1989) provides, in part: "The director may, for cause, refuse a license or permit to any person or *revoke a license or permit which had been granted....* All licenses and permits authorized by this chapter to be granted shall be deemed to have been granted by the director, and *the power and authority to revoke such licenses is vested in the director.*" (Emphasis added.)

This case is one of first impression, representing a challenge by the respondent to the DNR's authority to revoke hunting and fishing privileges under W.Va.Code § 20–2–38. The circuit court found this authority to be "very open ended," and ultimately held that it was limited to instances specifically involving violations of the West Virginia Code of State Regulations (CSR). The revocation of licenses is addressed in CSR § 58–49–3:

> 3.1 A license or licenses shall be revoked by the Division for the following causes:

> 3.1.1. Negligent Shooting. Except as provided in Section 5.1.1 of these regulations, the hunting licenses of any person convicted of negligent shooting under the provisions of W.Va.Code § 20–2–57 shall be revoked and license privileges shall be suspended for a period of five (5) years. The suspension period will begin on the date of conviction.

> 3.1.2. Amassed Points. The hunting or fishing licenses of any person who amasses ten (10) or more points in any two-year period shall be revoked and license privileges shall be suspended for a period of two (2) years....

Although W.Va.Code § 20–2–38 refers only to "cause" as a basis for revocation, in this instance the circuit court interpreted "cause" to mean "good cause." Further, the circuit court held:

> The words "good cause" as contained in the statute are not defined with any specificity and present a vague and overbroad discretion in the Director.

> The regulations promulgated and adopted by the division may well be said to direct, define and limit the application of "good cause."

There is no indication that the legislature in attempting to address the recited mischiefs intended to provide the Director with an open end opportunity to judge in retrospect....

In accordance with the above, the circuit court held the five-year revocation of Chester Snuffer's hunting and fishing privileges exceeded the statutory authority and jurisdiction of the DNR under W.Va.Code § 20–2–38. Further, the lower court found that the revocation was arbitrary and capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. We disagree with both holdings.

West Virginia Code § 20–2–1 (1989) establishes the public policy underlying the management of the wildlife resources of this State, requiring their protection "for the use and enjoyment of all the citizens...." Hunting and fishing privileges are specifically listed as benefits under this policy. West Virginia Code § 20–2–27 (1989) mandates the necessity of hunting and fishing licenses, and W.Va.Code § 20–2–28 (1994 Cum.Supp.) through § 20–2–63 (1989) sets forth the necessary provisions and procedures appertaining thereto.

■ Hunting and fishing privileges must be regulated in a manner which comports with the public policy underlying the management of wildlife resources. Realizing that licensing is an invaluable regulatory tool, the legislature established hunting and fishing licensing procedures which fall under the purview of the Director of the DNR. By their very nature, outdoor activities such as hunting and fishing are not easily supervised or regulated, so the legislature granted the Director broad powers to administer the licensing of these activities. Legislation which addresses all possible reasons for refusing or revoking a license would be impossible to draft. Thus, W.Va.Code § 20–2–38 states simply that "[t]he director may, for cause, refuse a license or permit to any person or revoke a license or permit which had been granted."

■ In syllabus point 2 of *Francis O. Day Co. v. Director, D.E.P.,* 191 W.Va. 134, 443 S.E.2d 602 (1994), this Court stated:

" ' "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syl. Pt. 1, *Smith v. State Workmen's Compensation Comm. [Com'r]*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 2, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984)." Syllabus point 2, *Lee v. West Virginia Teachers Retirement Board*, 186 W.Va. 441, 413 S.E.2d 96 (1991).

Further, in syllabus point 3 of *Day*, the Court held:

" 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syllabus point 1, *Courtney v. State Dept. of Health of West Virginia*, 182 W.Va. 465, 388 S.E.2d 491 (1989).

The legislative intent in enacting W.Va.Code § 20–2–38 is obvious, and the language of the statute is clear and unambiguous.

We conclude that W.Va.Code § 20–2–38 is not an improper grant of authority, nor does it vest overbroad discretion in the Director.[4] Rather, this statute is a wise and warranted delegation of authority, one that is necessary to deal with the Chester Snuffers of this State who continually violate the laws enacted to preserve our wildlife.

Accordingly, we hold that W.Va.Code § 20–2–38 (1989), as it relates to the refusal or revocation of hunting and fishing licenses or permits by the Director of the West Virginia Division of Natural Resources, shall be interpreted in accordance with its plain meaning. The Director may, for cause, refuse to issue a hunting or fishing license or revoke a license previously issued. The determination of what constitutes "cause" to refuse or revoke a license falls within the Director's discretion and is not limited to the specific violations set forth in the West Virginia Code of State Regulations. In the absence of abuse, the Director's discretion in these matters is unfettered.

Having determined that the actions of the Director comported with the statute, we must now determine whether his five-year revocation of the respondent's hunting and fishing privileges was arbitrary and capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

Hunting and fishing are recreational activities enjoyed by thousands of West Virginians. People tend to start hunting and fishing at an early age and continue to do so throughout their lifetime. The overwhelming majority of people hunt and fish within the constraints of the law and without ever being cited or charged with a single game violation. Between November 1977 and December 1993, the respondent, Chester C. Snuffer, was charged with and convicted of five game violations. In addition, he was convicted during this same period of transporting a pistol or revolver illegally in a motor vehicle and brandishing a deadly weapon while hunting. Other charges of carrying a loaded firearm in a vehicle and illegally transporting a firearm were dismissed.

Clearly, the respondent has exhibited a blatant disregard for the wildlife laws of this State. The Director has not only the discretion, but indeed the duty, to take appropriate action to address these continued wrongdoings. A five-year suspension of the respondent's hunting and fishing privileges seems quite appropriate. Given the facts presented in this case, we find the suspension is not arbitrary and capricious, nor is it characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

Accordingly, the judgment of the Circuit Court of Raleigh County is reversed.

Reversed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

CLECKLEY, J., concurs and reserves the right to file a concurring opinion.

---

4. Of course, such discretion is subject to judicial scrutiny under W.Va.Code § 29A–5–4 (1993).

CLECKLEY, Justice, concurring:

The majority's opinion is sound and solid. I concur only to reinforce the message.

The simple issue in this case is whether the Division of Natural Resources's official interpretation and application of organic legislation was a permissible reading of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Sniffin v. Cline,* 193 W.Va. 370, 456 S.E.2d 451 (1995). The policy underlying our grant of special deference to agency decisions and similar official agency pronouncements does not extend to every agency action. For example, it would not extend to *ad hoc* representations on behalf of an agency, such as litigation arguments. *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213, 109 S.Ct. 468, 474, 102 L.Ed.2d 493, 503 (1988) (little weight should be given to expedient litigation position of an agency). Similarly, an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear. *Pittston Coal Group v. Sebben,* 488 U.S. 105, 113, 109 S.Ct. 414, 420, 102 L.Ed.2d 408, 419–20 (1988). In this case, however, the issue involves a ruling of an agency which we deem was made within the agency's statutorily granted discretion. In situations in which a statute does not compel a single understanding, our prior decisions have held our duty is not to weigh the wisdom of, or to resolve any struggle between, competing views of public interest but, rather, is to respect legitimate policy choices made by an agency in interpreting and applying a statute. *See National R.R. Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52, 66 (1992), *quoting Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d at 703 (" 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute' ").