IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0403

_____

**FILED**

**March 28, 2014**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

WEST VIRGINIA CONSOLIDATED PUBLIC
RETIREMENT BOARD,
Respondent Below, Petitioner

v.

KEITH A. WOOD, WILLIAM E. WALKUP, TED M. CHEATHAM,
HERBERT E. LATTIMORE, JR., and JOHNNY L. R. FERNATT,
Petitioners Below, Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 11-AA-143

AFFIRMED
_____

Submitted: February 12, 2014
Filed: March 28, 2014

Lenna R. Chambers, Esq.
Bowles Rice LLP
Charleston, West Virginia
Attorney for Petitioner

Lonnie C. Simmons, Esq.
Elizabeth G. Kavitz, Esq.
DiTrapano, Barrett, DePiero
McGinley & Simmons, PLLC
Charleston, West Virginia
Attorney for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

2. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

3. "'Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous.' Syllabus Point 7, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975)." Syl. Pt. 4, *Hawkins v. W. Va. Dep't of Pub. Safety*, 223 W.Va. 253, 254, 672 S.E.2d 389, 390 (2008).

4. "'"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. pt. 4, *Security National Bank & Trust Company v. First W.Va. Bancorp, Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981).' Syllabus

point 3, *Smith v. Board of Education of County of Logan*, 176 W.Va. 65, 341 S.E.2d 685 (1985)." Syl. Pt. 7, *Lincoln Cnty. Bd. of Educ. v. Adkins*, 188 W.Va. 430, 424 S.E.2d 775 (1992).

5. "A statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).

6. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

7. "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syl. Pt. 1, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983).

8. "'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 3, *State ex rel. Fetters v. Holt*, 173 W.Va. 501, 318 S.E.2d 446 (1984).

9.  The phrase "period of armed conflict" as utilized in West Virginia Code § 5-10-15(b)(1) (2013), is not limited to the military engagements specifically identified in the statute but also includes other periods of armed conflict in which the United States has engaged, as the credible evidence presented in each individual case may dictate.

Workman, Justice:

This is an appeal by the West Virginia Consolidated Public Retirement Board (hereinafter "the Board") from a March 20, 2013, order of the Circuit Court of Kanawha County. The Board contends that the circuit court erred in reversing the Board's finding that five employees of the State of West Virginia covered by the Public Employees Retirement System (hereinafter "PERS") were not entitled to certain military service credit available through West Virginia Code § 5-10-15 (2013), despite their active service during several recognized periods of armed conflict and their honorable discharge from the United States military. In the consolidated administrative appeals, the circuit court held that the five employees were entitled to the military service credit they sought. The Board now appeals to this Court. Upon thorough review of the appendix record, the arguments of counsel, statutory requirements, and applicable precedent, this Court affirms the decision of the circuit court.

I.  Factual and Procedural History

A.  The Respondent Veterans

The respondents in this case are five individuals (hereinafter "Respondents") who served in various capacities in the United States military, subsequently entered public service with the State of West Virginia, and ultimately sought military service credit through

1

PERS. Respondent Keith Wood served on active duty with the United States Army from January 7, 1978, through September 29, 1992. While he served in the Army, Respondent Wood had some involvement in the events in Nicaragua, El Salvador, Honduras, Saudi Arabia, Kuwait, Lebanon, Yugoslavia, Iraq, and Iran. In 1992, Respondent Wood accepted employment with the State of West Virginia, and he contends that he was informed that he would receive five years of military service credit in PERS upon his employment.[1]

Although his PERS annual statements reflected five years of military service credit, when Respondent Wood inquired about retirement credit in 2011, he was informed by the Board that his military service credit had been calculated incorrectly, and that he was entitled to only eight months of military service credit. In applying for the credit, Respondent Wood relied upon his actual military service and an alternate estoppel argument, based upon the letters he received indicating that he was entitled to military credit and his reliance upon the statements made to him at the time of his initial employment with the State.[2] The Board awarded Respondent Wood only eight months of military service credit, based upon his

---

[1]Respondent Wood testified he was approached by former Administration Secretary Chuck Polan and former Governor Gaston Caperton regarding the position of Aviation Services Manager within the Aviation Division of the State of West Virginia. Respondent Wood further testified that upon his expression of reluctance to leave the military, Secretary Polan specifically told him that he would receive five years of military service credit.

[2]Respondent Wood is the only veteran in this consolidated appeal who presented an estoppel argument in addition to his argument that his actual service record warranted the full five years of military service credit.

2

service during the Persian Gulf War, August 2, 1990, through April 11, 1991.  Upon appeal to the circuit court, Respondent Wood was awarded the full five years of military service credit based upon his military service record.

Respondent William E. Walkup served on active duty as a United States Marine from May 5, 1983, to May 4, 1987, and  joined PERS in 1989 as a State employee. He was first employed by the State as an Interim Manager and Maintenance Director of Eastern West Virginia Regional Airport and later promoted to the position of Manager and Director of the Eastern West Virginia Regional Airport.  While serving in the Marine Corps, Respondent Walkup had some involvement in the events in Lebanon, Grenada, and El Dorado Canyon.  Respondent Walkup did not receive any military service credit at the Board level, but he was awarded four years of military service credit by the circuit court, based upon his service record.

Respondent Herbert E. Lattimore, Jr., served on active duty in the United States Army from May 4, 1975, through February 28, 2001, and became a member of PERS in 2002, as an employee of West Virginia's Division of Homeland Security and Emergency Management.  While Respondent Lattimore served in the Army, the United States was involved in conflict events in the Persian Gulf, Vietnam, Mayaguez, Beirut, Panama, Grenada, Nicaragua, Libya, and Kosovo.  The Board informed Respondent Lattimore that

he was eligible for eight months of military service credit in PERS for his active duty service from August 2, 1990, to April 11, 1991. On appeal to circuit court, he was awarded five years of military service credit, based upon his service record.

Respondent Teddy M. Cheatham served on active duty in the United States Army from May 29, 1977, to October 15, 1988, and became a member of PERS in 2006, as an employee of the State of West Virginia's Public Employees Insurance Agency. While Respondent Cheatham served in the Army, the United States was involved in conflict events in Nicaragua, Somalia, Lebanon, Granada, and Panama. The Board concluded that Respondent Cheatham was not entitled to any military service credit in PERS. The circuit court reversed that decision and held that Respondent Cheatham was entitled to receive the full five years of military service credit based upon his service record.

Respondent Johnny L. R. Fernatt served on active duty in the United States Navy from July 18, 1980, to February 16, 1990, became a member of PERS in 1998, and was most recently employed as a State Information Systems Manager. While he served in the Navy, the United States was involved in conflict events in Granada, Kosovo, Somalia, and Libya. The Board found the Respondent Fernatt was not eligible for military service credit in PERS. The circuit court reversed that decision and held that Respondent Fernatt was entitled to receive the full five years of military service credit based upon his service record.

4

B.  West Virginia Code § 5-10-15

When West Virginia Code § 5-10-15 was originally enacted in 1961, State

employees participating in PERS were entitled to receive military service credit only if they

actively served in the military during a time of compulsory service.[3]  In 2000, the West

Virginia Legislature enacted a revised PERS provision, West Virginia Code § 5-10-15b,[4]

granting up to five years of military service credit to PERS members who served on active

duty during a "period of armed conflict."  *See* W.Va. Code § 5-10-15(a)(2).  The statute

provides that "for purposes of this section" the term "period of armed conflict" is defined as:

> the Spanish-American War, the Mexican border period, World
> War I, World War II, the Korean conflict, the Vietnam era, the
> Persian Gulf War and any other period of armed conflict by the
> United States, including, but not limited to, those periods
> sanctioned by a declaration of war by the United States
> Congress or by executive or other order of the President.

*Id*. § 5-10-15(b)(1).  The statute thereafter sets forth specific beginning and ending dates[5] for

each of the named "period[s] of armed conflict," and provides that credit may be awarded

---

[3]Compulsory service in the military, otherwise known as "the draft," ended on July 1, 1973.

[4]Initially enacted as West Virginia Code § 5-10-15b, this provision was eventually merged into West Virginia Code § 5-10-15.  For purposes of the issues raised in this appeal, the guiding statute remains in effect without substantive change.  This Court will consequently refer to West Virginia Code § 5-10-15 in this opinion.

[5]The Spanish-American War is identified as 1898 to 1903; Mexican border period from 1916 to 1917; World War I from 1917 to 1918; World War II from 1941 to 1946; Korean conflict from 1950 to 1955; Vietnam era from 1961 to 1975; and Persian Gulf War from 1990 to 1991.  *See* W. Va. Code § 5-10-15(b)(2)-(8).

for service beyond the end date of an officially recognized conflict if the PERS member was stationed in a hostile territory. *See id*. § 5-10-15(b)(2)-(8).

Upon the inclusion of the "period of armed conflict" language in 2000, the Board began awarding military service credit for service during the specific "period[s] of armed conflict" listed in the statute. In October 2001, the Board determined that military service credit under this statutory provision would also be awarded for all active duty service occurring after September 11, 2001.

C. Decisions of the Board and Circuit Court

The Board denied the respondents' requests for military service credit for service occurring during periods of armed conflict other than those listed in the statute and post-September 11, 2001, service, and each respondent appealed the Board's orders to the circuit court. Those appeals were consolidated into a single civil action. On March 20, 2013, the circuit court ruled in favor of the respondents and granted each of their military service credit requests in full. All respondents, except Respondent Walkup, received the full five years of military service credit made available through the statute, and Respondent Walkup received four years of military service credit since he served only four years in the military. The Board appeals that decision to this Court.

6

## II. Standard of Review

In syllabus point one of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court held: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *Accord*, Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

Because resolution of this matter depends upon a determination of the meaning and proper application of a statutory pronouncement, this Court reviews the circuit court's decision *de novo*.

## III. Discussion

### A. Periods of Armed Conflict

In its primary and dispositive assignment of error, the Board contends that the circuit court erred in concluding that the respondents are statutorily entitled to the military service credit designated in the circuit court order. West Virginia Code § 5-10-15, as outlined above, provides that military service credit of up to five years shall be granted to a member of PERS who served in active duty in the armed forces of the United States during a "period of armed conflict" and was honorably discharged. The phrase "period of armed

7

conflict" as defined in West Virginia Code § 5-10-15(b)(1), encompasses certain identified military engagements "*and any other period of armed conflict* by the United States, *including, but not limited to*, those periods sanctioned by a declaration of war by the United States Congress or by executive or other order of the President." W.Va. Code § 5-10-15(b)(1) (emphasis supplied).

The respondents argued in circuit court and contend on appeal that the Legislature clearly did not intend military service credit to be *limited* to the specific armed conflicts identified in the statute. The respondents emphasize that the express language of the statute does not limit the military actions to those involving an actual declaration of war by the President or Congress. The respondents also direct this Court's attention to the Legislature's inclusion of a provision requiring liberal construction of the statute, as follows: "The provisions of this article shall be liberally construed so as to provide a general retirement system for the employees of the state herein made eligible for such retirement. . . ." W.Va. Code § 5-10-3a(a) (2013). The respondents maintain that liberal construction requires the conclusion that unless the statute clearly excludes a particular military campaign from being considered, all periods of armed conflict must be included in the calculation of an employee's military service credit.

In identifying the specific periods of armed conflict in which the United States has engaged, the respondents presented evidence in the administrative hearings in the form of Veterans of Foreign Wars (hereinafter "VFW") listings in the VFW Guide for Post Service Officers Veterans Benefits. Those listings include the following military engagements:

| | |
|---|---|
| El Salvador | January 1, 1981, through February 1, 1992 |
| Lebanon | June 1, 1983, through December 1, 1987 |
| Grenada | October 23, 1983, through November 21, 1983 |
| Persian Gulf | July 24, 1987, through August 1, 1990 |
| Panama | December 20, 1989, through January 31, 1990 |
| Somalia | December 5, 1992, through March 31, 1995 |

The circuit court agreed with the respondents' contentions and found that liberal construction of West Virginia Code § 5-10-15 compelled the conclusion that the Board must provide military service credit for the periods of armed conflict specifically identified in the statute, the post-September 11, 2001, period, *and* the other periods of armed conflict, as indicated in the VFW manual. The circuit court reasoned: "The Legislature explicitly never intended the military service credit awarded under the statute to be limited to the specific armed conflicts listed."[6] The circuit court found that the military actions listed in the VFW manual were similar in nature to and consistent with the periods of armed

------

[6]The circuit court observed the absence of clarity in the statute, noting that "[t]here is nothing in the statute, for example, to suggest either that a period of armed conflict necessarily must involve deaths in the field of battle or the firing of a single shot." The circuit court further stated that "[t]he statute also is silent on what evidence is required for a public employee to prove that he or she had actively served in the military during a period of armed conflict."

9

conflict specifically identified in the statute.[7]   It further stated that "[f]or reasons not made clear either in its regulations or prior rulings, [the Board] has chosen **not** to provide military service credit for **all** periods of armed conflict." (Emphasis in original).  Moreover, the circuit court recognized that "as indicated by this case, [the Board] has chosen to provide military service credit for some military campaigns, but not for others.  The rationale for making these distinctions is not apparent in [the Board's] regulations or web site and was not explained during the hearing."

On appeal, the Board contends that it has properly interpreted the statute to require military service credit for *only* those military engagements listed in the statute and post-September 11, 2001, service.[8]  Based upon that reasoning, the Board denies military service credit requests premised upon military service performed during other time periods.

---

[7]The Board cites the concept of *ejusdem generis* for the proposition that only military actions of similar nature should be included in the calculation of military service credits. That is a "canon of construction that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed."  Black's Law Dictionary 535 (7th ed. 1999).

Evidence presented during the administrative hearings included the fact that potential utilization of other military actions in the military service calculation had been considered by the Board or a committee.  Yet, as the circuit court observed, "at no point has [the Board] ever articulated in writing any explanation as to why these periods of armed conflict are not being recognized by [the Board] for purposes of calculating military service credits."

[8]All parties agree that post-September 11, 2001, military service should be included in the calculation of military service credit, and the inclusion of that time period is not at issue in this case.

The Board argues on appeal that it should be required to award military service credit only for service during those periods of armed conflict, occurring after the enactment of this statute, which are similar in scope and nature to the periods listed in the statute. The Board contends that its approach is consistent with the intent of the Legislature and emphasizes that the Legislature did not specifically name any military engagements between 1975 and 1990, despite the fact that it would have been aware of certain intervening military engagements when it enacted this legislation in 2000.

With regard to its rationale, the Board contends that the circuit court should have accorded more weight to the Board's own interpretation of the requirements of the statutory provision at issue. *See* SyI. Pt. 4, *Hawkins v. W. Va. Dep't of Pub. Safety*, 223 W.Va. 253, 254, 672 S.E.2d 389, 390 (2008) ("'Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous.' Syllabus Point 7, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975)."). Similarly, the Board emphasized that West Virginia Code § 5-10-15(b)(6) requires doubt to be resolved in favor of the Board's interpretation: "In any case of doubt as to the period of service to be credited a member under the provisions of this section, the board of trustees have final power to determine the period."

11

While this Court agrees with the proposition that the Board's interpretation is entitled to deference, it is imperative that a reviewing court also consider the possibility, as the circuit court did in the present case, that the Board's interpretation is erroneous. As we noted in syllabus point seven of *Lincoln County Board of Education v. Adkins*, 188 W.Va. 430, 424 S.E.2d 775 (1992): "'"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. pt. 4, *Security National Bank & Trust Company v. First W.Va. Bancorp, Inc*., 166 W.Va. 775, 277 S.E.2d 613 (1981).' Syllabus point 3, *Smith v. Board of Education of County of Logan*, 176 W.Va. 65, 341 S.E.2d 685 (1985)." Additionally, as the circuit court in this case recognized, while West Virginia Code § 5-10-15(b)(6) does provide the Board with authority to determine military service credit in the case of doubt, the Board "necessarily would have to make such determination **consistent with** the broad definition of 'period of armed conflict' mandated by the Legislature and with the liberal construction of this statute required by W.Va. Code § 5-10-3a." (Emphasis in original).[9]

---

[9]"[D]eference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 260 (1991) (Scalia, J., concurring). Regarding deference to be accorded to agency interpretations, courts have also been astute in observing that deference cannot be provided unless there is a tangible agency construction to which a court may defer. As the United States Supreme Court explained in *United States v. Mead Corp.*, 533 U.S. 218 (2001), deference in the federal realm is only accorded where "Congress delegated authority to the agency generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 218, 226-27. "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement

In this Court's determination of the appropriate resolution of this matter, we recognize that the crucial element of controversy is the matter of statutory construction. As summarized above, the Board contends that it properly interpreted and applied the statute. The respondents maintain that the Board's interpretation is unnecessarily restrictive and that the circuit court's rationale and resulting conclusions were correct. Consequently, the issue presented in this appeal requires this Court to ascertain the meaning of the subject statutory language and its proper application to the respondents' requests for military service credit. Although this Court has consistently observed that clear and unambiguous statutes shall not be subject to interpretation,[10] we have also definitively stated that "[a] statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186

guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Chistensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (referencing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). When the agency's position has been articulated as a litigation position, as in the present case, this Court has declined to accord deference to the agency's interpretation. *See West Virginia Health Care Cost Review Authority v. Boone Memorial Hosp.*, 196 W.Va. 326, 334, 472 S.E.2d 411, 419 (1996) (observing that "courts customarily withhold *Chevron* deference from agencies litigating positions . . . . We see no reason to take a different tack in this instance."); *In re Snuffer*, 193 W.Va. 412, 417, 456 S.E.2d 493, 498 (1995) (Cleckley, J., concurring) ("The policy underlying our grant of special deference to agency decisions and similar official agency pronouncements does not extend to every agency action. For example, it would not extend to ad hoc representations on behalf of an agency, such as litigation arguments.").

[10]*See* Syl. Pt. 3, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

W.Va. 693, 414 S.E.2d 454 (1992). "Ambiguity is a term connoting doubtfulness, doubleness of meaning of indistinctness or uncertainty of an expression used in a written instrument." *Crockett v. Andrews*, 153 W.Va. 714, 718-19, 172 S.E.2d 384, 387 (1970).

In defining "period of armed conflict" in West Virginia Code § 5-10-15 (b)(1), the statute first identifies certain specific periods to be included. Immediately thereafter, however, the statute *also* provides that *other periods* to be utilized in calculation of military service credit include "any other periods of armed conflict by the United States, including, but not limited to, those periods sanctioned by a declaration of war by the United States Congress or by executive or other order of the President." *Id.*

This Court's reading of the statute compels the conclusion that it is ambiguous with regard to the meaning of the phrase "periods of armed conflict." The inclusion of such broad and unspecific language renders this statute capable of varying interpretations, as illustrated, in part, by the vehement disagreement among the parties to this action. A statute which is susceptible of two or more meanings is characterized as ambiguous. *See Vanderbilt Mortg. & Fin., Inc. v. Cole*, 230 W.Va. 505, 510, 740 S.E.2d 562, 567 (2013) ("'A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.'")

14

(quoting *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949)); *Sizemore v. State Farm Gen. Ins. Co.,* 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (allowing judicial construction where "language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions" and the provision is "of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.").

Having found the subject statutory language ambiguous, this Court is required to construe the statute and determine its proper application to the facts of this case. In endeavoring to construe an ambiguous statute, this Court is cognizant that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975); *see also* Syl. Pt. 1, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

The statute at issue herein distinctly directs that military service credit is required to be granted to members of PERS who served in the United States military during particular military engagements. To determine the intent of the Legislature with respect to precisely which military engagements should be included in the calculation of military

15

service credit, the circuit court correctly examined the express language of the statute, the statutory requirement of liberal construction, and other documents chronicling periods of armed conflict in which the United States military has engaged.

Some evidence of the intent of the Legislature may also be gleaned from the introductory passage of West Virginia Code § 5-10-15(a)(1), as follows:

> The Legislature recognizes the men and women of this state who have served in the Armed Forces of the United States during times of war, conflict and danger. It is the intent of this section to confer military service credit upon persons who are eligible at any time for public employees retirement benefits for any time served in active duty in the Armed Forces of the United States when the duty was during any period of compulsory military service or during a period of armed conflict, as defined in this section.

Moreover, the express language of the statutory definition of "period of armed conflict" indicates a legislative intent to identify certain military conflicts that must be included in the military service credit calculation *and* to include other unidentified periods of armed conflict in the calculation of military service credit. This language employed by the Legislature is extremely broad and unrestrictive, necessitating an inquiry into what other periods of armed conflict should be included in the calculation. An application of the statute including only the named military conflicts would not confer any meaning to the remainder of the paragraph. In endeavoring to interpret a statute in a manner which gives meaning to each part, this Court stated as follows in syllabus point three of *State ex rel. Fetters v. Holt*, 173 W.Va. 501, 318

16

S.E.2d 446 (1984): "'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)."

The Board's contention, on appeal, that a calculation of military service benefits should include only those military engagements occurring after the statute's enactment is suspect. If the Legislature had so intended, it could have employed language indicating that only *subsequent* periods of armed conflict could be added to the existing list or it could have stated that only periods of armed conflict occurring after a certain date could be added to the existing list. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Mangus v. Ashley*, 199 W.Va. 651, 658, 487 S.E.2d 309, 316 (1997) (citations omitted). Absent obvious indication of intent to add only *subsequent* military engagements, the Board's argument on appeal is mere speculation, utterly unsupported by the statutory language. This Court finds the Board's interpretation to be in clearly erroneous and severely limited in scope.

Accordingly, we hold that the phrase "period of armed conflict" as utilized in West Virginia Code § 5-10-15(b)(1) (2013), is not limited to the military engagements specifically identified in the statute but also includes other periods of armed conflict in which

17

the United States has engaged, as the credible evidence presented in each individual case may dictate. The liberal construction to which this statute is entitled compels our conclusion that any doubt about a particular military engagement's inclusion within the calculation of military service credit must be resolved in favor of such inclusion. Applying this holding to the facts sub judice, we conclude that the circuit court properly interpreted and applied West Virginia Code § 5-10-15 to include periods of armed conflict not specifically identified in the statute. The circuit court's evaluation of the respondents' military service properly resulted in the conclusion that Respondents Wood, Cheatham, Lattimore, and Fernatt are entitled to five years of military service credit and Respondent Walkup is entitled to four years of military service credit. We affirm the circuit court's method of calculating the military service credit to which each respondent is entitled.[11]

---

[11]In addition to the primary assignment of error addressed and resolved above, the Board also asserts that the circuit court erred in concluding that the Fourteenth Amendment to the West Virginia Constitution is applicable to the determination of additional periods of time as "periods of armed conflict." The Fourteenth Amendment to the West Virginia Constitution is the "Veterans Bonus Amendment" and provides a mechanism through which a cash bonus may be paid to veterans of the armed forces who served during conflicts in the Persian Gulf, Lebanon, Grenada, and Panama. This Court's review of the circuit court order reveals that it utilized the Fourteenth Amendment as an example of an additional source of information in the determination of what military engagements should be included in the calculation of military service credit. The circuit court examined both the list of military engagements included in the VFW manual and the list included in the Fourteenth Amendment to separately calculate entitlement to military service credit. The VFW manual provided the most comprehensive list of military engagements and thus resulted in the most credit for the respondents. Consequently, because this Court has affirmed the circuit court's reliance upon the VFW manual and the resulting military service credit to the respondents, we find the circuit court's reference to the Fourteenth Amendment unnecessary to its ultimate conclusion and therefore irrelevant in this appeal.

B. Respondent Wood's Alternate Theory of Recovery

The Board also contends that the circuit court erred in addressing Respondent Wood's alternate theory of recovery, holding that Respondent Wood would be entitled to military service credit based on the principles of equitable estoppel. The Board contends that Respondent Wood failed to demonstrate detrimental reliance on the alleged promises of military credit and emphasizes that the original promise of credit was based upon a mistaken impression that Respondent Wood had begun his military service during the draft years.

Although Respondent Wood presented evidence that he was persuaded to accept a position with the State due to the promise of five years of military service credit and was provided with statements showing his entitlement to military credit, this Court affirms the circuit court's decision to grant Respondent Wood's full five years of military service credit based upon his actual service record. Review of his alternate argument, the merits of which have been contested by the Board, is unnecessary to this Court's decision. Such alternate theory, regardless of its merit, is extraneous and immaterial in light of our conclusion that the circuit court was correct in granting the military service credit based upon Respondent Wood's actual military service record.

19

## C. Board's Lack of Articulation of its Interpretation

The Board also maintains that the circuit court erred by concluding that the Board had failed to properly articulate its interpretation of West Virginia Code § 5-10-15. The Board premises this assignment of error upon the circuit court's observation that the Board could have enacted a legislative rule explaining the basis for its determinations regarding the statutory phrase, "period of armed conflict." This Court finds this assignment of error meritless. The circuit court, while suggesting that the issues could have been more efficiently explained and resolved through enactment of a legislative rule, certainly did not base its conclusions of law or awards of military service credit upon any failure of the Board to enact such rules. We find no error in the circuit court's observations on this issue and no effect upon the ultimate ruling made by the circuit court.

## D. Prior Inconsistent Decisions

As its final assignment of error, the Board contends that the circuit court erred in granting relief to the respondents based on prior Board and circuit court decisions involving other individuals seeking military service credit. Again, this Court finds no merit in the Board's arguments in this regard. While the circuit court evaluated prior military service credit decisions for purposes of ascertaining the appropriate application of the

20

guiding statute, the circuit court did not rely upon those prior decisions as conclusively settling the issues or binding the Board to a certain statutory application.[12]

## IV. Conclusion

Based upon the foregoing, this Court finds that the Circuit Court of Kanawha County did not err in holding that the respondents are entitled to the military service credit as awarded in the circuit court's order of March 20, 2013. That order is consequently affirmed.

Affirmed

---

[12]In a 2009 decision in the Circuit Court of Kanawha County regarding military service credit eligibility for Mr. Daniel Olthaus, the circuit court granted five years of military service credit based upon the military campaigns listed in the VFW manual. The Board contends that it did not appeal that decision because it became moot when it was determined that Mr. Olthaus lacked the requisite number of years of state service to retire. In another prior decision, the Board granted military service credit to Mr. Archie Hubbard in 2008 based on Mr. Hubbard's military service during the United States' involvement in the Grenada military engagement. In addressing that prior decision, the Board essentially maintains that it should be free to alter its interpretation and application of the statutory requirements and should not be bound by the decision it made in Mr. Hubbard's situation. While those prior cases are illustrative of previous inconsistent interpretations, the circuit court did not find them binding or dispositive of the present case. Thus, any argument on this issue is inconsequential at this juncture.

The Board also expresses a general concern regarding costs of administering the retirement system if military service credit is permitted for the military engagements identified in the VFW manual. This Court finds such policy arguments to be more appropriately addressed to the Legislature. This Court's obligation is to interpret and apply the provisions of an ambiguous statute, not to address the financial or public policy underpinnings of such statutory provisions.