IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 17-0437

_____

FILED

**May 1, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ASHLAND SPECIALTY CO. INC.,
Petitioner Below, Petitioner

v.

DALE W. STEAGER, STATE TAX COMMISSIONER OF WEST VIRGINIA,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie L. Webster
Civil Action No. 14-AA-102

AFFIRMED

_____

Submitted:  April 11, 2018
Filed:  May 1, 2018

Floyd M. Sayre, III, Esq.               Patrick Morrisey, Esq.
Bowles Rice LLP                         Attorney General
Martinsburg, West Virginia              Katherine A. Schultz, Esq.
                                        Senior Deputy Attorney General
Mark A. Lloyd, Esq.                     Cassandra L. Means, Esq.
(admitted pro hac vice)                 Assistant Attorney General
Bingham Greenbaum Doll LLP              Charleston, West Virginia
Louisville, Kentucky                    Counsel for the Respondent
Counsel for the Petitioner

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE DAVIS and JUSTICE KETCHUM dissent in part and concur in part and reserve the right to file separate opinions dissenting in part and concurring in part.

SYLLABUS BY THE COURT

1.  "In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in *W. Va. Code,* 29A-5-4(g) [1988].  Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo.*"  Syllabus Point 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012).

2.  "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis."  Syllabus Point 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

3.  "A review of a proportionality determination made pursuant to the Excessive Fines Clause of the West Virginia Constitution is de novo."  Syllabus Point 8, *Dean v. State*, 230 W. Va. 40, 736 S.E.2d 40 (2012).

WALKER, Justice:

Ashland Specialty Company, Inc. (Ashland) unlawfully sold 12,230 packs of cigarettes in West Virginia in 2009 that were not approved for sale by the Tax Commissioner of the State of West Virginia (Commissioner).[1]  Acting pursuant to West Virginia Code § 16-9D-8(a) (2016), the Commissioner penalized Ashland $159,398 for selling those cigarettes unlawfully, a penalty equal to 500% of the cigarettes' retail value. The Office of Tax Appeals (OTA) then ordered that penalty reduced by twenty-five percent.  On review, the Circuit Court of Kanawha County reversed the OTA and reimposed the Commissioner's original $159,398 penalty.

Contrary to Ashland's arguments on appeal, we find that the Commissioner's original penalty (1) is not an abuse of the discretion afforded the Commissioner under West Virginia Code § 16-9D-8(a); (2) should not be cancelled or reduced due to circumstances that Ashland argues mitigate their unlawful cigarette sales; and (3) does not violate the Excessive Fines Clause of the West Virginia Constitution or the Eighth Amendment to the United States Constitution.  For those reasons, and as discussed more fully below, we affirm the April 11, 2017 order of the Circuit Court of Kanawha County reversing the OTA and reinstating the Tax Commissioner's original $159,398 penalty.

---

[1] Mark W. Matkovich was the Tax Commissioner at the commencement of this matter.  He was later replaced by Dale W. Steager.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Before addressing the facts specific to Ashland's appeal, we first briefly review the statutes implicated by their arguments. These include West Virginia Code §§ 16-9B-1 through 4 (2016) ("Implementing Tobacco Master Settlement Agreement") and §§ 16-9D-1 through 10 (2016) ("Enforcement of Statute Implementing Tobacco Master Settlement Agreement"), related to the Tobacco Master Settlement Agreement (MSA) and subsequent efforts by the Legislature to ensure the MSA and its related requirements are enforced.

## A.    *The MSA.*

In 1998, leading tobacco product manufacturers entered into the MSA with the State of West Virginia.[2] In pertinent part, "[t]he master settlement agreement obligates these manufacturers, in return for a release of past, present and certain future claims against them . . . to pay substantial sums to the State (tied in part to their volume of sales) . . . ."[3] The following year, the Legislature enacted Article 9B of Chapter 16. In part, Article 9B requires cigarette manufacturers who are not part of the MSA, but whose cigarettes are sold in West Virginia, to make annual deposits into escrow accounts intended to pay a

---

[2] W. Va. Code § 16-9B-1(e) (2016).

[3] *Id.*

2

judgment or settlement resulting from a claim brought against the manufacturer by the State or a West Virginia resident.[4]

In 2003, the West Virginia Legislature enacted model legislation to prevent violations and aid enforcement of the obligations imposed by Article 9B of Chapter 16 of the West Virginia Code.[5]  This legislation, codified at Article 9D of Chapter 16 of the West Virginia Code, directs the Commissioner to create and maintain a directory of cigarette brands approved for sale in West Virginia.[6]  Chapter 16, Article 9D also charges the Commissioner with adding or removing manufacturers from the list as appropriate,[7] but not without first notifying the manufacturer and distributors of the manufacturer's affected brand or brands.[8]  However, a manufacturer or distributor's failure to receive notice from the Commissioner of changes to the directory, or even the Commissioner's failure to

---

[4] W. Va. Code §§ 16-9B-1(f) and 3(b)(2)(A) (2016).

[5] W. Va. Code §§ 16-9D-1 through 10 (2016).

[6] W. Va. Code § 16-9D-3(b), which states in full:

> The commissioner shall develop and publish on the Tax Division's website a directory listing all tobacco product manufacturers that have provided current and accurate certifications conforming to the requirements of subsection (a) of this section and all brand families that are listed in the certifications, except as provided in subdivisions (1) and (2) of this subsection.

[7] W. Va. Code § 16-9D-3(b)(3).

[8] *Id*. § 16-9D-3(b)(3)(A) and (B).

provide such notice, does not excuse a party from their obligations under Article 9D of Chapter 16 of the West Virginia Code.[9]

It is unlawful to sell, offer, or possess for sale in West Virginia a brand of cigarettes that is not included in the Commissioner's list.[10] Pursuant to West Virginia Code § 16-9D-8(a), the Commissioner may impose a wide range of penalties upon a party that sells a brand of cigarettes in West Virginia when that brand does not appear on the Commissioner's list—that is, when the brand is "delisted."

**B.    *Ashland's Violations of § 16-9D-3(c).***

Ashland is a Kentucky corporation that distributes cigarettes to convenience stores in West Virginia and other states. It is undisputed that between June and September 2009, Ashland sold 12,210 packs of delisted GP and GP Galaxy Pro brand cigarettes and 20 packs of delisted Berley brand cigarettes in violation of West Virginia Code § 16-9D-3(c). The Commissioner identified these illegal sales during a 2012 audit. In August 2012, pursuant to his authority under § 16-9D-8(a), the Commissioner assessed a $159,398 penalty upon Ashland, a penalty equal to 500% of the retail value of the 12,230 packs of delisted cigarettes.

---

[9] W. Va. Code § 16-9D-3(b)(3)(C).

[10] *Id*. § 16-9D-3(c)(2). The statute contains two exceptions that do not apply here.

4

The Commissioner previously assessed a $3,808 penalty upon Ashland for selling 56 cartons of delisted cigarettes from 2001 to 2003. Ashland had also paid a $5,127 penalty for selling 62 cartons of delisted cigarettes from 2005 to 2008. Like the penalty imposed by the Commissioner in 2012, these penalties equated to 500% of the retail value of the delisted cigarettes. Ashland did not contest these smaller penalties.

## C.    *Review before the OTA.*

Ashland timely petitioned the OTA to review the Commissioner's August 2012 penalty assessment. The administrative law judge (ALJ) conducted an evidentiary hearing in August 2013. Testimony offered at the hearing by a representative of the West Virginia State Tax Department indicated that the Commissioner consistently imposes a 500%-of-retail-value penalty for violations of West Virginia Code § 16-9D-3(c). Specifically, the Commissioner's representative testified:

> Yes. My auditors have no discretion. I mean they have the ability to come to me. I have the ability to go to my director and get anything—to request something less. It's never happened. I mean we—in my recollection, they've all been 500 percent that we've done. And these are rare. There's not many of them. . . .
>
> I've never gone up the food chain for any—. I've never heard a good explanation to go up the food chain. Our audit program is locked in at 500 percent. I mean I don't—. Like I said, these were rare. I don't recall any reason to ask for a reduced rate.

When asked to justify the 500%-of-retail-value penalty imposed by the Commissioner in this case, the representative explained that Ashland had "two previous

5

audits, that they've been forewarned, and—they're still continuing to do so, I don't really see any need to reduce it. I mean, they've had plenty of warning and they keep making the same error."

In August 2014, the ALJ issued a written order finding the Commissioner's $159,398 penalty to be "erroneous, unlawful, void, or otherwise invalid[.]" The ALJ reasoned that "the Tax Commissioner exercised no discretion at all in issuing the penalty" to Ashland because the evidence demonstrated that the Commissioner invariably assessed the 500%-of-retail-value penalty for the sale of delisted cigarettes. Additionally, the ALJ concluded that the $159,398 penalty was too harsh because "[c]ommon sense tells us that the maximum penalty should be reserved for the worst offenders, for example, a seller who deliberately sells delisted brands or who engages in some criminal activity in connection with cigarette sales." Consequently, the ALJ reduced the penalty by 25% to $119,548.50.

### D. Review before the Circuit Court of Kanawha County.

Both the Commissioner and Ashland appealed the OTA's reduction of the Commissioner's original penalty, and briefing on the matter proceeded before the Circuit Court of Kanawha County.[11] On April 11, 2017, the circuit court entered an order reversing the order of the OTA and reinstating the Commissioner's original penalty. The circuit

---

[11] Ashland appealed to the Circuit Court of Cabell County, and the Commissioner appealed to the Circuit Court of Kanawha County. The Circuit Court of Cabell County transferred Ashland's appeal to the Circuit Court of Kanawha County.

6

court found, among other things, that: (1) the OTA erred in concluding that the Commissioner exercised no judgment, when the $159,398 penalty imposed was not the maximum permitted by West Virginia Code § 16-9D-8(a); (2) the OTA erred in concluding that the Commissioner abused his discretion by imposing the same, proportional penalty on all violators of § 16-9D-3(c); and (3) the $159,398 penalty did not violate the Excessive Fines Clause of the West Virginia Constitution or the Eighth Amendment to the United States Constitution. Ashland now appeals from that order.

## II.    Standard of Review

Ashland's arguments implicate several standards of review. We set out each below within the analysis of the corresponding assignment of error.

## III.    Analysis

Ashland attacks the circuit court's order on several fronts. First, it argues that the circuit court erred by reinstating the Commissioner's original $159,398 penalty. Ashland contends that the OTA correctly concluded that the Commissioner's consistent application of a 500%-of-retail-value penalty is, itself, an abuse of discretion, and that by reinstating the Commissioner's original judgment, the circuit court substituted its judgment for that of the OTA. Ashland also argues that the circuit court should have further reduced, or completely forgiven, the reduced penalty ordered by the OTA due to circumstances that Ashland contends mitigate its violation of West Virginia Code § 16-9D-3(c). Ashland next argues that the Commissioner's original penalty violates the Excessive Fines Clause of the

7

West Virginia Constitution and the Eighth Amendment to the United States Constitution. It also challenges the Circuit Court of Kanawha County as the appropriate venue for the proceedings below. We address each of Ashland's arguments in turn.

## A. *Reinstatement of the Commissioner's original penalty.*

Ashland first argues that the circuit court abused its discretion by reversing the decision of the OTA and reinstating the Commissioner's original $159,398 penalty. In Syllabus Point 1 of *Griffith v. ConAgra Brands, Inc.*,[12] this Court confirmed the standard of review applicable to appeals such as Ashland's:

> In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in *W. Va. Code*, 29A-5-4(g) [1988]. Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*.[13]

West Virginia Code § 29A-5-4(g) (2015) provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

---

[12] 229 W. Va. 190, 728 S.E.2d 74 (2012).

[13] *Id.*

(1) In violation of constitutional or statutory provisions; or

. . .

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis."[14] With this standard in mind, we analyze Ashland's argument that the circuit court erroneously reinstated the Commissioner's original $159,398 penalty.

The Tax Commissioner penalized Ashland's sale of delisted cigarettes under West Virginia Code § 16-9D-8(a). That subsection states:

(a) Revocation of business registration certificate and civil money penalty. — In addition to or in lieu of any other civil or criminal remedy provided by law, upon a determination that a distributor, stamping agent or any other person has violated subsection (c), section three [§16-9D-3] of this article, or any rule adopted pursuant thereto, the commissioner *may* revoke or suspend the business registration certificate of the distributor, stamping agent or other person in the manner provided by article twelve [§§ 11-12-1 et seq.], chapter eleven of this code. Each stamp affixed and each sale or offer to sell cigarettes in violation of [§ 16-9D-3(c)] constitutes a separate violation. The commissioner *may* also impose a civil penalty in an amount not to exceed the greater of five hundred percent of the retail value of the cigarettes or five thousand dollars upon a determination of violation of [§ 16-9D-3(c)] or any

_____

[14] Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

9

rules adopted pursuant thereto. The penalty shall be imposed and collected in the manner that tax is assessed and collected under article ten [§§ 11-10-1 et seq.], chapter eleven of this code. The amount of penalty collected shall be deposited in the tobacco control special fund created in section nine [§ 16-9D-9] of this article.[15]

The parties agree that this subsection provides the Commissioner with broad discretion[16] to select a penalty for Ashland's unlawful sale of 12,230 packs of delisted cigarettes in 2009. For example, the Commissioner could have revoked or suspended Ashland's West Virginia business registration. And, he could have imposed a civil penalty on Ashland of up to $61,150,000, that is, $5,000 per violation, assuming that Ashland sold each delisted pack of cigarettes individually.[17] And, of course, the Commissioner could have imposed the exact penalty that he actually did in this case: a civil penalty equivalent to 500% of the delisted cigarettes' retail value.

Based on the plain language of West Virginia Code § 16-9D-8(a), we conclude that the circuit court did not err by reinstating the Commissioner's original

---

[15] W. Va. Code § 16-9D-8(a) (emphasis added).

[16] *See State v. Hedrick*, 204 W. Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion.").

[17] In its briefing, Ashland asserted that the Commissioner's original $159,398 penalty was the maximum civil penalty that could be imposed under West Virginia Code § 16-9D-8(a). However, in response to the Court's inquiry during oral argument, Ashland's counsel conceded that the maximum penalty permitted by § 16-9D-8(a) was, in fact, over $61 million, as the Commissioner argued. In this sense, the OTA's finding that the Commissioner imposed the maximum penalty on Ashland is clearly wrong.

$159,398 penalty. First, and most importantly, the Commissioner imposed a penalty that is expressly provided for in § 16-9D-8(a). Thus, the Commissioner did not violate that subsection; he strictly complied with it.[18] Nor was the Commissioner's original $159,398 penalty arbitrary or capricious.[19] There is no dispute that Ashland sold 12,230 packs of delisted cigarettes in 2009. Ashland, therefore, violated § 16-9D-3(c) and was subject to any of the penalties set forth in § 16-9D-8(a). The Commissioner imposed a penalty that directly correlated to the retail value of the cigarettes that Ashland sold unlawfully. Consequently, the Commissioner's original $159,398 penalty was both supported by substantial evidence and based on reason and, therefore, was neither arbitrary nor capricious.[20] For those same reasons, we reject Ashland's assertion that the circuit court simply substituted its own judgment for that of the OTA when it reinstated the Commissioner's original penalty.

Ashland's primary argument in opposition—that the Commissioner's consistent application of a 500%-of-retail-value penalty is, itself, an abuse of the discretion afforded him by West Virginia Code § 16-9D-8(a)—is a red herring, albeit an intriguing

---

[18] *See* W. Va. Code § 29A-5-4(g)(1) (court shall reverse, vacate or modify the decision of the agency because the administrative decision violates statutory provisions).

[19] *Id*. § 29A-5-4(g)(6).

[20] *See* Syl. Pt. 3, *In re Queen*, 196 W. Va. at 442, 473 S.E.2d at 483.

one.  Unfortunately, we find the authority relied upon by the OTA to justify adoption of Ashland's argument, *Brunson v. Pierce County*,[21] unpersuasive.

In *Brunson*, a Washington county imposed one-year suspensions on the licenses of three women who violated various county ordinances governing erotic dancing.[22]  In setting the one-year suspensions, the responsible county official considered the seriousness of the offense, but not the dancers' personal situations or criminal histories.[23]  The official testified that she could not think of a situation where a penalty less than a one-year suspension—the maximum penalty permitted—would be appropriate.[24]  A Washington intermediate appellate court reversed the one-year suspensions because the county official did not consider the dancers' individual circumstances and so failed to exercise the discretion granted to her by the applicable county ordinance.[25]

We are not inclined to follow *Brunson* for several reasons.  First, it is not binding on this Court, and the case has not been cited outside of Washington.  Second, it arises from a factual scenario drastically different than that presented here.  The three

---

[21] 205 P.3d 963 (Wash. App. Div. 2 2009).

[22] *Id*. at 965.

[23] *Id*.

[24] *Id*. at 965, 967.

[25] *Id*. at 967.

dancers penalized by the county official in *Brunson* (who testified regarding the specific hardships the suspensions would create for their families[26]) are not comparable to a multi-state distributor of convenience store items, such as Ashland. Moreover, the penalty at issue in *Brunson* was not calibrated to the severity of the dancers' offenses. In this case, the penalty imposed by the Commissioner each time Ashland violated West Virginia Code § 16-9D-3(c) reflected the retail value of the cigarettes sold illegally. So, when Ashland sold 560 packs of delisted cigarettes between January 2001 and November 2003, it paid a $3,808 penalty. And, six years later, when Ashland sold many more packs of delisted cigarettes (12,230), the Commissioner imposed a much larger penalty upon it ($159,398). Thus, unlike in *Brunson*, the rubric applied by the Commissioner in this case reflects a factual circumstance explicitly recognized in § 16-9D-3(c): the retail value of the cigarettes unlawfully sold by Ashland.

Finally, the county official in *Brunson* applied the maximum penalty permitted by the relevant county ordinance. That is not the case, here. As Ashland admitted during oral argument, West Virginia Code § 16-9D-8(a) enables the Commissioner to impose a civil penalty up to $61,150,000 in this case and to suspend Ashland's business registration. The Commissioner exercised neither option. In light of

---

[26] *Id*. at 965.

13

those distinctions, the circuit court did not err by finding that the OTA's reliance on *Brunson* was misplaced and declining to apply the reasoning of that case in this instance.

The West Virginia authority relied upon by Ashland, footnote 6 of our decision in *Gentry v. Magnum*,[27] is also distinguishable. In *Gentry*, we stated: "In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them."[28] We offered the commentary in that footnote in the course of reviewing a circuit court's decision as to the admissibility of certain testimony under the West Virginia Rules of Evidence.[29] While this Court has cited that dicta from *Gentry* on several occasions, we have not cited it in the context of a review of an administrative decision.[30] And this makes sense. Ashland's

---

[27] *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995).

[28] *Id.*

[29] *Id.* at 520, 466 S.E.2d at 179.

[30] *State v. Greeson*, App. No. 16-0497, 2017 WL 2210145, at *3 (W. Va. May 19, 2017) (reviewing circuit court's exclusion of certain evidence at trial for abuse of discretion); *Rife v. Shields*, App. No. 15-0975, 2016 WL 6819045, at *3 (W. Va. Nov. 18, 2016) (reviewing judgment entered pursuant to West Virginia Rule of Civil Procedure 60(b) for abuse of discretion); *Melody A. v. Todd A.*, App. No. 14-1112, 2016 WL 3410340, at *3 (W. Va. June 14, 2016) (reviewing circuit court's custody decision for abuse of discretion); *Prima Mktg., LLC v. Hensley*, App. No. 14-0275, 2015 WL 869265, at *2 (W. Va. Feb. 27, 2015) (reviewing denial of motion to set aside entry of default judgment for abuse of discretion); *State v. Bowling*, 232 W. Va. 529, 550, 753 S.E.2d 27, 48 (2013) (reviewing circuit court's admission of certain testimony for abuse of discretion); *State ex rel. Thrasher Eng'g, Inc. v. Fox*, 218 W. Va. 134, 139 n.2, 624 S.E.2d 481, 486 n.2 (2005) (reviewing circuit court's determination of whether to permit the filing of a third-party

appeal is subject to review under West Virginia Code § 29A-5-4(g) and its interpretive case law, such as *In re Queen*. Those authorities sufficiently guide this Court's review without resort to the *Gentry* dicta cited by Ashland. We decline Ashland's entreaty to rely on footnote 6 of *Gentry*, now, to reject the circuit court's reinstatement of the Commissioner's original $159,398 penalty, in light of our conclusion that that penalty was supported by substantial evidence and based on reason.

We likewise find unpersuasive Ashland's argument that the circuit court should have further reduced the discounted penalty ordered by the OTA, or forgiven it altogether. As explained above, in West Virginia Code § 16-9D-8(a), the Legislature granted discretion to the Commissioner to impose a range of penalties for the sale of delisted cigarettes. The Legislature did not dictate to the Commissioner what factors it should or should not consider in selecting a penalty under § 16-9D-8(a). Nor did the Legislature instruct the Commissioner to reduce or abate a penalty if the offending party

---

complaint for abuse of discretion); *Shafer v. Kings Tire Serv., Inc.*, 215 W. Va. 169, 177, 597 S.E.2d 302, 310 (2004) (reviewing circuit court's decision to award attorneys' fees for abuse of discretion); *State ex rel. Leung v. Sanders*, 213 W. Va. 569, 575, 584 S.E.2d 203, 209 (2003) (reviewing for abuse of discretion circuit court's determination of whether to permit the filing of a third-party complaint); *State v. Calloway*, 207 W. Va. 43, 47, 528 S.E.2d 490, 494 (1999) (reviewing circuit court's evidentiary rulings for abuse of discretion); *State ex rel. Kahle v. Risovich*, 205 W. Va. 317, 322–23, 518 S.E.2d 74, 79–80 (1999) (reviewing circuit court's grant of new trial for abuse of discretion); and *State v. Hedrick*, 204 W. Va. 547, 552–53, 514 S.E.2d 397, 402–03 (1999) (reviewing for abuse of discretion circuit court's decision on whether to remit a previously forfeited bail bond).

15

demonstrated "reasonable cause," as it has done in other statutes cited by Ashland.[31] There is no equivalent "reasonable cause" exception in §§ 16-9D-3(c) or 16-9D-8(a), and we will not read one into those statutes.[32] Even if we could read such an exception into those statutes, it would not make sense to do so. The Legislature has already stated that the Commissioner's failure to provide notice to distributors of the delisting of a brand of cigarettes does not excuse a violation of § 16-9D-3(c).[33] This legislative statement cuts strongly against a gloss on either §§ 16-9D-3(c) or 16-9D-8(a) that includes the "reasonable cause" exception advocated by Ashland.

In sum, we conclude that the circuit court did not err in reversing the order of the OTA and reinstating the Commissioner's original $159,398 penalty against Ashland for the sale of 12,230 packs of delisted cigarettes, in violation of West Virginia Code § 16-9D-3(c).

---

[31] *See, e.g.*, W. Va. Code § 11-10-18(a)(1) (2013) (imposing penalty where party fails to file tax return, unless "it is shown that such failure is due to reasonable cause and not due to willful neglect").

[32] *See W. Va. Consol. Pub. Ret. Bd. v. Wood*, 233 W. Va. 222, 230, 757 S.E.2d 752, 760 (2014) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (internal quotation and alteration omitted).

[33] *See* W. Va. Code § 16-9D-3(b)(3)(C).

**B.** *The Excessive Fines Clause of the West Virginia Constitution and the Eighth Amendment to the United States Constitution.*

As it did before the circuit court, Ashland argues that the Commissioner's $159,398 penalty violates both the Excessive Fines Clause of the West Virginia Constitution and the Eighth Amendment to the United States Constitution. The circuit court held that the penalty was not excessive under either the state or federal constitutions. "A review of a proportionality determination made pursuant to the Excessive Fines Clause of the West Virginia Constitution is de novo."[34] Following a de novo review, we find that the penalty imposed by the Commissioner was not grossly disproportionate to the gravity of Ashland's offense, and so affirm the circuit court.

This Court recently analyzed a civil forfeiture under the Excessive Fines Clause of the West Virginia Constitution and the Eighth Amendment to the United States Constitution. Civil forfeiture is a slightly different context than the civil penalty at issue in this case, but our analysis and decision in *Dean v. State* is instructive, nevertheless.[35]

---

[34] Syl. Pt. 8, *Dean v. State*, 230 W. Va. 40, 736 S.E.2d 40 (2012).

[35] Neither party disputes that the $159,398 penalty implicates the Eighth Amendment. Nevertheless, we do observe that, "[c]ivil fines serving remedial purposes do not fall within the reach of the Eighth Amendment. However, if a civil sanction can only be explained as serving in part to punish, then the fine is subject to the Eighth Amendment." *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 277 (4th Cir. 2007) (internal quotation omitted). Assuming that the $159,398 penalty is at least partially punitive and thus subject to the Eighth Amendment, we would still affirm the circuit court's order because we find that the penalty is not grossly disproportionate to the gravity of Ashland's offense.

Following the United States Supreme Court's decision in *United States v. Bajakajian*,[36] this Court identified in *Dean* several factors to determine whether the amount of a forfeiture of real property pursuant to West Virginia Code § 60A-7-703(a)(8) (2014) was grossly disproportionate to the gravity of the defendant's offenses, and therefore excessive. As we explained in *Dean*:

> Factors to be considered in assessing whether the amount of the forfeiture is grossly disproportionate to the gravity of an offense, include: (1) the amount of the forfeiture and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the crime charged and other crimes; and (4) the harm caused by the charged crime.[37]

The factors set forth by this Court in *Dean* presuppose that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature."[38]

We enunciated the *Dean* factors in the context of a civil forfeiture, rather than a civil penalty. However, the *Dean* factors, which themselves are derived from the United States Supreme Court's decision in *Bajakajian*, closely follow factors considered by federal courts since *Bajakajian* to determine whether a punitive, civil penalty is grossly disproportionate to the gravity of a party's violation.[39] Therefore, we apply the *Dean*

---

[36] 524 U.S. 321 (1998).

[37] Syl. Pt. 7, in part, *Dean*, 230 W. Va. at 40, 736 S.E.2d at 40.

[38] *Bajakajian*, 524 U.S. at 336.

[39] *See U.S. Sec. & Exch. Comm'n v. Brookstreet Sec. Corp.*, 664 F. App'x 654, 656 (9th Cir. 2016) ("This court generally considers four factors when weighing the gravity of a violation: (1) the nature and extent of the violation, (2) whether the violation was related

18

factors, here, to determine whether the civil penalty imposed on Ashland is grossly disproportionate to the gravity of its violation of West Virginia Code § 16-9D-3(c), and, therefore, whether the civil penalty violates article III, section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution.

The first factor, the amount of the penalty and its relationship to the authorized penalty, cuts in the Commissioner's favor. As both parties acknowledge, the maximum penalty authorized by the Legislature for Ashland's violation of West Virginia Code § 16-9D-3(c) is $61,150,000—a penalty roughly 383 times larger than the one actually imposed by the Commissioner.[40] Additionally, the Commissioner could have also suspended or revoked Ashland's business registration, an option that the Commissioner did not exercise.

The second factor, the nature and extent of the criminal activity, also weighs in the Commissioner's favor. Prior to 2012, the Commissioner had fined Ashland twice for selling delisted cigarettes in violation of West Virginia Code § 16-9D-3(c). Obviously,

---

to other illegal activities, (3) the penalties that may be imposed for the violation, and (4) the extent of the harm caused."); *United States v. Aleff*, 772 F.3d 508, 512 (8th Cir. 2014) (assessing proportionality of a civil penalty under "variety of factors, including the reprehensibility of the defendant's conduct; the relationship between the penalty and the harm to the victim; and the sanctions in other cases for comparable misconduct").

[40] The Fifth Circuit Court of Appeals has gone so far as to hold that "[n]o matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment." *Newell Recycling Co., Inc. v. U.S. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000).

Ashland was aware of its obligation not to sell delisted cigarettes and its obligation to remain apprised of changes to the Commissioner's directory of approved brands.[41] Moreover, it was aware of the potential civil penalties it could face for future violations. Federal courts have also affirmed administrative penalties similar in size to the $159,398 penalty imposed by the Commissioner, in this case.[42]

The third and fourth factors also mitigate in favor of the conclusion that the penalty imposed by the Commissioner is not grossly disproportionate to Ashland's violation. With regard to the third factor—the relationship between Ashland's violation of West Virginia Code § 16-9D-3(c) and other violations—the West Virginia Legislature has authorized similar, civil penalties in the context of the retail sale of alcohol.[43] As to the fourth factor, that is, the harm caused by Ashland's violation of § 16-9D-3(c), we do not agree with Ashland that the sole victim of its sale of delisted cigarettes is the State. The Legislature enacted §§ 16-9D-1 through 10 to prevent violations and aid enforcement of the laws implementing the MSA and so to "safeguard the Master Settlement Agreement,

---

[41] *See* W. Va. Code § 16-9D-3(b)(3)(C).

[42] *See Salisbury v. United States*, 368 Fed. App'x 310 (2010) ($152,500 civil penalty imposed on lobster fisherman for violation of the Magnuson-Stevens Act was not excessive).

[43] *See* W. Va. Code § 60-3A-26 (2014) (authorizing West Virginia Alcohol Beverage Control Commissioner to impose a civil penalty of up to $1,000 per violation of statutes or rules controlling the sale of alcohol by retail liquor licensees).

the fiscal soundness of the state, and the public health."[44]  Thus, contrary to Ashland's arguments, we find credible the Commissioner's position that Ashland's violation of § 16-9D-3(c) threatens public harm.

In sum, our analysis of the *Dean* factors demonstrates that the $159,398 penalty imposed is not grossly disproportionate to the severity of Ashland's unlawful activity, that is, the sale of 12,230 packs of delisted cigarettes in violation of West Virginia Code § 16-9D-3(c).  Accordingly, the circuit court did not err in holding that the Commissioner's original $159,398 penalty does not violate the Excessive Fines Clause of the West Virginia Constitution or the Eighth Amendment to the United States Constitution.

### C. Venue.

Finally, Ashland argues that under West Virginia Code § 11-10A-19(c)(3) (2013), the appropriate venue for its administrative appeal was the Circuit Court of Cabell County and not the Circuit Court of Kanawha County.  We readily dispose of this argument on the grounds of waiver.

"[T]the inadequacy of appellate relief in matters involving 'a substantial legal issue regarding venue' may require the resolution of such issues through the exercise

---

[44] W. Va. Code § 16-9D-1.

of original jurisdiction."[45]  In this case, Ashland did not pursue a writ of prohibition challenging the Circuit Court of Kanawha County as the venue for its appeal of the OTA's decision.  Rather, it fully briefed the matter before the Circuit Court of Kanawha County without objecting to venue[46] and only raises the issue now, before this Court.  On these facts, we find that Ashland has waived its objection to venue in the Circuit Court of Kanawha County[47] and that any error with regard to venue that may have occurred in the proceedings, below, is harmless.

## IV.    CONCLUSION

For the foregoing reasons, the April 11, 2017 order of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

[45] *State ex rel. Air-Squid Ventures, Inc. v. Hummel*, 236 W. Va. 142, 145, 778 S.E.2d 591, 594 (2015) (quoting *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995)).

[46] In footnote 1 of "Ashland Specialty's Brief in Reply to State Tax Commissioner's Response to Ashland Specialty's Merit Brief," Ashland acknowledged that it had filed its appeal to the OTA's decision with the Circuit Court of Cabell County, and that its appeal was subsequently transferred to the Circuit Court of Kanawha County.  Ashland did not, however, object or otherwise argue that the Circuit Court of Kanawha County was an improper venue for the matter.

[47] *See Hansbarger v. Cook*, 177 W. Va. 152, 157, 351 S.E.2d 65, 70–71 (1986) (concluding that party waived venue defense where he did not argue venue in a motion to dismiss, or raise the issue in his answer or in any other responsive pleading).